## UNITED STATES DISTRICT COURT FOR
## THE SOUTHERN DISTRICT OF NEW YORK

PETER LYLE,

                Plaintiff,

     v.

CONSTELLATION PHARMACEUTICALS,
INC., JIGAR RAYTHATHA, SCOTT N.
BRAUNSTEIN, MARK A. GOLDSMITH,
RICHARD S. LEVY, ELIZABETH G. TRÉHU,
JAMES E. AUDIA, and STEVEN L. HOERTER,

                Defendants.

CASE NO.: _____

DEMAND FOR JURY TRIAL

## COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

Plaintiff, Peter Lyle ("Plaintiff"), by his undersigned attorneys, for this Complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel, as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1.      This is an action brought by Plaintiff against Constellation Pharmaceuticals, Inc. ("Constellation" or the "Company"), and the members of the Company's board of directors (collectively referred to as the "Board" or the "Individual Defendants" and, together with Constellation, the "Defendants") for their violations of Sections 14(d)(4), 14(e), and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78n(d)(4), 78n(e), 78t(a), respectively, and United States Securities and Exchange Commission ("SEC") Rule 14d-9, 17 C.F.R. §240.14d-9(d) ("Rule 14d-9"). Plaintiff's claims arise in connection with the proposed tender offer by MorphoSys AG, a German stock corporation ("Parent") through its wholly-owned subsidiary MorphoSys Development Inc., ("Purchaser," together Parent and Purchaser are referred to as

"MorphoSys") to acquire all outstanding shares of the Company ("Tender Offer"). Plaintiff also asserts a claim against the Individual Defendants for breaching their fiduciary duty of candor/disclosure under state law.

2.      On June 2, 2021, Constellation entered into an agreement and plan of merger with Purchaser and Parent ("Merger Agreement"), whereby Purchaser will acquire all outstanding shares of the Company's common stock at a price of $34.00 per share in cash, which represents a total equity value of $1.7 billion ("Offer Price").

3.      On June 16, 2021, in order to convince Constellation public common shareholders to tender their shares, the Board authorized the filing of a materially incomplete and misleading Schedule 14D-9 Solicitation/Recommendation Statement ("Recommendation Statement") with the SEC.

4.      In particular, the Recommendation Statement contains materially incomplete and misleading information concerning: (i) the financial projections for Constellation; and (ii) the valuation analyses performed by the Company's financial advisor, Centerview Partners LLC ("Centerview") in connection with the Tender Offer.

5.      The Tender Offer is scheduled to expire at 111:59 p.m. New York City Time, on July 14, 2021 ("Expiration Time").  Therefore, it is imperative that the material information that has been omitted from the Recommendation Statement is disclosed to the Company's shareholders prior to the Expiration Time, so Constellation's shareholders can properly determine whether to tender their shares.

6.      For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Defendants for violations of Sections 14(d)(4), 14(e), and 20(a) of the Exchange Act and Rule 14d-9. Plaintiff seeks to enjoin Defendants from closing on the Tender Offer, or taking any steps to consummate it unless and until the material information discussed below is disclosed to Constellation's public common stockholders sufficiently in advance of the Expiration Time or, in the

event the Tender Offer is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

7.     This Court has jurisdiction over all claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(d)(4), 14(e), and 20(a) of the Exchange Act and Rule 14d-9.

8.     Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over each Defendant by this Court permissible under the traditional notions of fair play and substantial justice.  "Where a federal statute such as Section 27 of the [Exchange] Act confers nationwide service of process, the question becomes whether the party has sufficient contacts with the United States, not any particular state." *Sec. Inv'r Prot. Corp. v. Vigman*, 764 F.2d 1309, 1315 (9th Cir. 1985).  "[S]o long as a defendant has minimum contacts with the United States, Section 27 of the Act confers personal jurisdiction over the defendant in any federal district court." *Id.* at 1316.

9.     Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as 28 U.S.C. § 1391, because Defendants are found or are inhabitants or transact business in this District.  Indeed, the Company's common stock trades on the Nasdaq Global Select Market ("Nasdaq"), which is headquartered in this District.  *See, e.g., United States v. Svoboda*, 347 F.3d 471, 484 n.13 (2d Cir. 2003) (collecting cases).  Further, Constellation's legal advisor in connection with the Tender Offer, Wachtell, Lipton, Rosen & Katz is located in this District at 51 West 52nd Street, New York, NY 10019.

## PARTIES

10.     Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of Constellation common stock.

11.     Defendant Constellation is a public company incorporated under the laws of Delaware with principal executive offices located at 215 First Street, Suite 200, Cambridge, Massachusetts 02142.  The Company's common stock is traded on the Nasdaq under the ticker symbol "CNST."

12.     Individual Defendant Jigar Raythatha, has served as President and Chief Executive Officer and as a member of our Board of Directors at all relevant time since March 2017

13.     Individual Defendant Scott N. Braunstein, has served as a member of the  Board of Directors at all relevant times since February 2019.

14.     Individual Defendant Mark A. Goldsmith, has served as a member of the  Board of Directors at all relevant times since July 2009.

15.     Individual Defendant Richard S. Levy, has served as a member of the Board of Directors at all relevant times since April 2020

16.     Individual Defendant Elizabeth G. Tréhu, has served as a member of the  Board of Directors at all relevant times since November 2015.

17.     Individual Defendant James E. Audia, has served as a member of the  Board of Directors at all relevant times since July 2017.

18.     Individual Defendant Steven L. Hoerter has served as a member of the  Board of Directors at all relevant times since September 2018.

19.     Defendants identified in paragraphs 12 through 18 are collectively referred to herein as the "Board" or the "Individual Defendants," and together with Constellation, the "Defendants."

## SUBSTANTIVE ALLEGATIONS

I.      **Background of the Company, MorphoSys, and the Tender Offer**

20.     Constellation is a clinical-stage biopharmaceutical company using its expertise in epigenetics to discover and develop novel therapeutics that address serious unmet medical needs in patients with cancers associated with abnormal gene expression or drug resistance. The Company's integrated epigenetics platform enables it to validate targets and generate small molecules impacting these targets to selectively modulate gene expression in tumor and immune cells to drive anti-tumor activity to design clinical development programs supported by novel biomarker strategies. Constellation is able to target a broad variety of epigenetic regulators using its platform and has generated development candidates acting against distinct classes of those regulators.

21.     The Company has utilized its epigenetics platform to discover and design our wholly owned product candidates pelabresib (CPI-0610), which inhibits bromodomain and extra terminal domain, or BET, proteins; and CPI-1205 and CPI-0209 which inhibit the enhancer of zeste homolog 2, or EZH2, protein.   Constellation has observed preliminary evidence of clinical activity in patients treated with each of the three products in Phase 1 and 2 clinical trials.

22.     MorphoSys is a commercial-stage biopharmaceutical company dedicated to the discovery, development and commercialization of innovative therapies for people living with cancer and autoimmune diseases. Based on its leading expertise in antibody, protein and peptide technologies, MorphoSys is advancing its own pipeline of new drug candidates and has created antibodies which are developed by partners in different areas of unmet medical need.

23.     According to the February 11, 2021, press release announcing the Tender Offer:

**MorphoSys to Acquire Constellation Pharmaceuticals**

*Accelerates Growth Strategy by Adding Two Mid- to Late-Stage Product Candidates:*
*Pelabresib (CPI-0610) and CPI-0209*
*Bolsters Position in Hematology-Oncology and Expands into Solid Tumors*

*Best-in-Class Combined Discovery and Development Capabilities Accelerates Ability*
*to Provide New Cancer Treatments to Patients*

5

* * *

**Planegg/Munich, Germany and Cambridge, Mass. – June 2, 2021 –** MorphoSys AG (FSE: MOR; NASDAQ: MOR) ("MorphoSys"), and Constellation Pharmaceuticals, Inc., (NASDAQ: CNST) ("Constellation") today announced that they have entered into a definitive agreement whereby MorphoSys will acquire Constellation for $34.00 per share in cash, which represents a total equity value of $1.7 billion. The transaction has been unanimously approved by the management board (Vorstand) and the supervisory board (Aufsichtsrat) of MorphoSys, as well as the Board of Directors of Constellation and is expected to close in the third quarter of 2021.

Constellation is a clinical-stage biopharmaceutical company using its expertise in epigenetics to discover and develop novel therapeutics that address serious unmet medical needs in patients with various forms of cancer. Constellation's two lead product candidates, pelabresib (CPI-0610), a BET inhibitor, and CPI-0209, a second-generation EZH2 inhibitor, are in mid- to late-stage clinical trials and have broad therapeutic potential to offer meaningful benefits to patients with various hematological and solid tumors. Pelabresib has the potential to be a first- and best-in-class BET inhibitor and is currently in Phase 3 clinical trials for myelofibrosis, a bone marrow cancer that disrupts the body's normal production of blood cells. CPI-0209 is currently in Phase 2 with best-in-class potential for treating hematological and solid tumors. Constellation's pipeline also includes numerous preclinical compounds.

"This transformational acquisition represents a major step forward for MorphoSys as we bolster our position in hematology-oncology," said Jean-PaulKress, M.D., Chief Executive Officer of MorphoSys. "Both pelabresib and CPI-0209 have broad potential and we look forward to unlocking their full benefits for cancer patients. Our existing clinical and commercial expertise is ideally suited to accelerate Constellation's programs, enabling us to maximize Constellation's potential and bring these novel therapies to market. With Constellation's high-potential product candidates, complementary R&D capabilities, and outstanding team, we can further advance our mission in the fight against cancer."

"We are proud that MorphoSys has recognized the strength of our team, our expertise in epigenetics, and our high-potential oncology development pipeline and discovery programs," said Jigar Raythatha, President and Chief Executive Officer of Constellation. "Becoming part of MorphoSys creates an industry leader with commercial capabilities, a deep R&D pipeline and complementary small molecule and biologics discovery and translational capabilities, as well as the financial strength to compete to win. Our shareholders will receive attractive, immediate and certain cash value for their shares, the employees of the combined entity will have a broader platform and greater opportunities, and patients will potentially benefit frominnovative new therapies that address serious unmet needs."

* * *

**Benefits of the Transaction**

- **Accelerates Growth Strategy with Exciting Mid-to Late-Stage Product**

**Candidates.** The transaction accelerates MorphoSys' strategy to grow through proprietary drug development and commercialization. Constellation's lead product candidates, pelabresib and CPI-0209, have broad potential, with expected approvals across a range of oncology indications in the coming years. Constellation's lead compounds fit well with MorphoSys' proven clinical development, regulatory and commercial capabilities, and MorphoSys is well positioned torapidly advance and unlock the potential of the Constellation portfolio.

- **Bolsters Position in Hematology-Oncology and Expands into Solid Tumors**. Constellation adds an attractive, complementary pipeline of highly innovative late- to early-stage cancer therapy candidates, augmenting MorphoSys' existing pipeline in hematologic malignances and expanding into potential therapies for solid tumors.

- **Strengthens Cutting-Edge Research and Technology Organization.** The transaction leverages MorphoSys' expertise in biologics and Constellation's expertise in epigenetics and small molecule discovery platforms to develop a broad range of oncology therapies. Constellation adds exciting, pioneering science and attractive preclinical compounds targeting epigenetic regulators. Together, MorphoSys' and Constellation's highly talented research and development teams will strengthen earlier stage and emerging science to bring exciting new cancer therapies to patients.

\* \* \*

**Transaction Details**

Under the terms of the merger agreement, an indirect wholly-owned subsidiary of MorphoSys will promptly commence a tender offer to acquire all of the outstanding shares of Constellation's common stock at a price of $34.00 per share in cash. Following successful completion of the tender offer, MorphoSys will acquire all remaining shares not tendered in the offer through a second step merger at the same price as in the tender offer.

MorphoSys plans to pay an all-cash consideration for the transaction. The tender offer is not subject to a financing condition.

The purchase price of $34.00 per share in cash represents a premium of approximately 70% to Constellation's volume-weighted average price for the last five trading days. Consummation of the tender offer is subject to various conditions including a minimum tender of at least a majority of outstanding Constellation shares, the expiration or termination of the waiting period under the Hart-Scott-Rodino Antitrust Improvements Act and the receipt of any approvals or clearances required to be obtained under the applicable antitrust laws, and other customary conditions. The transaction is expected to close in the third quarter of 2021.

Following close, MorphoSys will remain headquartered in Munich, Germany, and will maintain a significant commercial and R&D presence in Boston, Massachusetts.

**Advisors**

Goldman Sachs Bank Europe SE acted as financial advisor to MorphoSys and
Skadden, Arps, Slate, Meagher & Flom LLP as its legal advisor. Centerview Partners
LLC acted as financial advisor to Constellation and Wachtell, Lipton, Rosen & Katz as
its legal advisor. Goodwin Procter LLP acted as legal advisor to Royalty Pharma.

24.    The Offer Price represents inadequate compensation for the Company's shares.
Recommendation Statement, 1, 6.

25.    Therefore, it is imperative that Constellation's shareholders receive the material
information (discussed in detail below) that Defendants have omitted from the Recommendation
Statement, necessary to properly exercise their corporate suffrage rights and make an informed
decision on whether to tender their shares.

**II.     The Recommendation Statement Omits Material Information**

26.    Defendants filed a materially incomplete and misleading Recommendation Statement
with the SEC that is necessary for Constellation's public common stockholders to make an informed
decision concerning whether to tender their shares. The Individual Defendants were obligated to
carefully review the Recommendation Statement before it was filed with the SEC and disseminated
to the Company's stockholders to ensure that it did not contain any material misrepresentations or
omissions.  Thus, the Recommendation Statement should be amended.

27.    First, the Recommendation Statement fails to disclose complete information
regarding the Company's projections ("Management Projections").    Specifically, the
Recommendation Statement states that Constellation management provided the Board and
Centerview with prospective financial information for fiscal years 2021 through 2040, based on
management's view of the prospects for the Company, including with respect to pelabresib (CPI-
0610), CPI-0209, and certain other drug candidates in the early stages of research and development.
Registration Statement page 19.  The Registration Statement, however, fails to disclose the figures
behind the inputs used to calculate Constellation's EBIT and Unlevered Free Cash Flow for fiscal

years 2021 through 2040. Recommendation Statement, 21-22.  Footnote two of the Management

Projections defines EBIT as earnings before interest expenses and taxes, but fails to disclose the

inputs and assumption underlying the calculations. *Id.* The text accompanying the Management

Projections states that unlevered free cash flows of the Company, which were calculated based on

the Projections and other Company management projected financial information, as earnings before

interest expenses and taxes ("EBIT"), less tax expense, plus depreciation and amortization, less

capital expenditures, less changes in networking capital. *Id.* at 22.  Accordingly, the Company must

disclose the actual figures behind these inputs, so Constellation's shareholders can understand how

the Company arrived at the EBIT and unlevered free cash flow numbers presented in the Company

Forecasts.

28.    Unlike poker where a player must conceal his unexposed cards, the object of a

recommendation statement is to put all of one's cards on the table face-up. In this case, only some

of the cards were exposed—the others were concealed. If a recommendation statement discloses

financial projections and valuation information, such projections must be complete and accurate.

The question here is not the duty to speak, but liability for not having spoken enough. With regard

to future events, uncertain figures, and other so-called soft information, a company may choose

silence or speech elaborated by the factual basis as then known—but it may not choose half-truths.

*See Campbell v. Transgenomic, et al.*, No. 18-2198 (8th Cir., March 1, 2019) (noting that "half-

truths" are actionable misrepresentations under securities laws and collecting cases).

29.    Second, the Recommendation Statement omits material information regarding

Centerview's financial analyses of Constellation performed in connection with the Tender Offer.

30.    With respect to Centerview's *Selected Public Company Analysis*, the

Recommendation Statement does not disclose: (i) the reasons underlying the selection of the

Companies observed; (ii) the inputs and assumptions underlying the application of the chosen range

of 2026E EV/Revenue Multiples of 1.5x to 3.5x; and (iii) the inputs and assumptions underlying risk adjustment to the 2026 projected revenue used in this analysis.  Registration Statement, 26.

31.     As for the *Discounted Cash Flow Analysis*, the Recommendation Statement omits: (i) the inputs and assumptions underlying the discount rates ranging from 11.0% to 13.0%; (ii) the weighted average cost of capital applied in the analysis; (iii) the inputs and assumptions underlying the forecasted risk-adjusted, after-tax unlevered free cash flows of the Company over the period beginning on July 1, 2021 and ending on December 31, 2040; and (iv) the inputs and assumptions underlying the projected tax savings from usage of the Company's estimated federal net operating losses of $440 million as of December 31, 2020 and future losses. *Id.* at 28.

32.     These key inputs are material to Constellation's shareholders, and their omission renders the summary of Centerview's *Discounted Cash Flow Analysis* incomplete and misleading. As one highly-respected law professor explained regarding these crucial inputs, in a discounted cash flow analysis a banker takes management's forecasts, and then makes several key choices "each of which can significantly affect the final valuation."  Steven M. Davidoff, Fairness Opinions, 55 Am. U.L. Rev. 1557, 1576 (2006).  Such choices include "the appropriate discount rate, and the terminal value…" *Id.*  As Professor Davidoff explains:

> There is substantial leeway to determine each of these, and any change can markedly affect the discounted cash flow value.  For example, a change in the discount rate by one percent on a stream of cash flows in the billions of dollars can change the discounted cash flow value by tens if not hundreds of millions of dollars….This issue arises not only with a discounted cash flow analysis, but with each of the other valuation techniques.  *This dazzling variability makes it difficult to rely, compare, or analyze the valuations underlying a fairness opinion **unless full disclosure is made of the various inputs in the valuation process, the weight assigned for each, and the rationale underlying these choices***. The substantial discretion and lack of guidelines and standards also makes the process vulnerable to manipulation to arrive at the "right" answer for fairness.  This raises a further dilemma in light of the conflicted nature of the investment banks who often provide these opinions.

*Id.* at 1577-78 (emphasis added).  Without the above-mentioned information, Constellation's shareholders cannot evaluate for themselves the reliability of Centerview's *Discounted Cash Flow Analysis*, make a meaningful determination of whether the implied equity value ranges reflect the true value of the Company or were the result of an unreasonable judgment by Centerview, and make an informed decision regarding whether to tender their shares.

33.     In sum, the omission of the above-referenced information renders the Recommendation Statement materially incomplete and misleading, in contravention of the Exchange Act.  Absent disclosure of the foregoing material information prior to the Expiration Date concerning the Tender Offer, Plaintiff will be unable to make an informed decision concerning whether to tender his shares, and he is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CAUSES OF ACTION

### COUNT I

**(Against All Defendants for Violation of Section 14(e) of the Exchange Act)**

34.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

35.     Section 14(e) of the Exchange Act provides that it is unlawful "for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading…" 15 U.S.C. §78n(e).

36.     Defendants violated § 14(e) of the Exchange Act by issuing the Recommendation Statement in which they made untrue statements of material facts or failed to state all material facts necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading, in connection with the Tender Offer.  Defendants knew or recklessly

disregarded that the Recommendation Statement failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

37.     The Recommendation Statement was prepared, reviewed, and/or disseminated by Defendants.  It misrepresented and/or omitted material facts, including material information about the Offer Price and the intrinsic value of the Company.

38.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(e).  The Individual Defendants were therefore reckless, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Recommendation Statement, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

39.     The omissions, and incomplete and misleading statements in the Recommendation Statement are material in that reasonable stockholders would consider them important in deciding whether to tender their shares.  In addition, a reasonable investor would view the information identified above which has been omitted from the Recommendation Statement as altering the "total mix" of information made available to stockholders.

40.     Defendants knowingly or with deliberate recklessness omitted the material information identified above from the Recommendation Statement, causing certain statements therein to be materially incomplete and therefore misleading.  Indeed, while Defendants undoubtedly had access to and/or reviewed the omitted material information in connection with approving the Tender Offer, they allowed it to be omitted from the Recommendation Statement, rendering certain portions of the Recommendation Statement materially incomplete and therefore misleading.

41.     The misrepresentations and omissions in the Recommendation Statement are material to Plaintiff, and Plaintiff will be deprived of his entitlement to make a fully informed decision if such misrepresentations and omissions are not corrected prior to the Expiration Time.

## COUNT II

**(Against all Defendants for Violations of Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9, 17 C.F.R. § 240.14d-9)**

42.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

43.     Defendants have caused the Recommendation Statement to be issued with the intention of soliciting stockholder support of the Tender Offer.

44.     Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9 promulgated thereunder require full and complete disclosure in connection with tender offers.  Specifically, Section 14(d)(4) provides that:

> Any solicitation or recommendation to the holders of such a security to accept or reject a tender offer or request or invitation for tenders shall be made in accordance with such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

45.     SEC Rule 14d-9(d), which was adopted to implement Section 14(d)(4) of the Exchange Act, provides that:

> Information required in solicitation or recommendation. Any solicitation or recommendation to holders of a class of securities referred to in section 14(d)(1) of the Act with respect to a tender offer for such securities shall include the name of the person making such solicitation or recommendation and the information required by Items 1 through 8 of Schedule 14D-9 (§ 240.14d-101) or a fair and adequate summary thereof.

46.     In accordance with Rule 14d-9, Item 8 of a Schedule 14D-9 requires a Company's directors to:

> Furnish such additional information, if any, as may be necessary to

make the required statements, in light of the circumstances under which they are made, not materially misleading.

47.     The omission of information from a recommendation statement will violate Section 14(d)(4) and Rule 14d-9(d) if other SEC regulations specifically require disclosure of the omitted information.

48.     The Recommendation Statement violates Section 14(d)(4) and Rule 14d-9 because it omits material facts, including those set forth above, which renders the Recommendation Statement false and/or misleading.  Defendants knowingly or with deliberate recklessness omitted the material information identified above from the Recommendation Statement, causing certain statements therein to be materially incomplete and therefore misleading.  Indeed, while Defendants undoubtedly had access to and/or reviewed the omitted material information in connection with approving the Tender Offer, they allowed it to be omitted from the Recommendation Statement, rendering certain portions of the Recommendation Statement materially incomplete and therefore misleading.

49.     The misrepresentations and omissions in the Recommendation Statement are material to Plaintiff, and Plaintiff will be deprived of his entitlement to make a fully informed decision if such misrepresentations and omissions are not corrected prior to the Expiration Date.

## COUNT III

**(Against all Defendants for Violations of Section 20(a) of the Exchange Act)**

50.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

51.     The Individual Defendants acted as controlling persons of Constellation within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of Constellation, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Recommendation Statement filed with the SEC, they had the power to influence and control and did

influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

52.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Recommendation Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

53.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same.  The Recommendation Statement contains the unanimous recommendation of each of the Individual Defendants to approve the Tender Offer.  They were thus directly involved in preparing this document.

54.     In addition, as the Recommendation Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement.  The Recommendation Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered.  The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

55.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

56.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate

result of the Individual Defendants' conduct, Plaintiff will be irreparably harmed.

57.     Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT IV

### (Against the Individual Defendants for Breach of Fiduciary Duty of Candor/Disclosure)

58.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

59.     By virtue of their role as directors and/or officers of the Company, the Individual Defendants directly owed Plaintiff and all Company shareholders a fiduciary duty of candor/disclosure, which required them to disclose fully and fairly all material information within their control when they seek shareholder action, and to ensure that the Recommendation Statement did not omit any material information or contain any materially misleading statements.

60.     As alleged herein, the Individual Defendants breached their duty of candor/disclosure by approving or causing the materially deficient Recommendation Statement to be disseminated to Plaintiff and the Company's other public shareholders.

61.     The misrepresentations and omissions in the Recommendation Statement are material, and Plaintiff will be deprived of his right to make an informed decision on whether to tender his shares if such misrepresentations and omissions are not corrected prior to the Expiration Time. Where a shareholder has been denied one of the most critical rights he possesses—the right to make a fully informed decision—the harm suffered is an individual and irreparable harm.

62.     Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

16

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.      Preliminarily enjoining Defendants and all persons acting in concert with them from proceeding with the Tender Offer or consummating the Tender Offer, unless and until the Company discloses the material information discussed above which has been omitted from the Recommendation Statement;

B.      Directing the Defendants to account to Plaintiff for all damages sustained as a result of their wrongdoing;

C.      Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

D.      Granting such other and further relief as this Court may deem just and proper.

## **JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.


Dated: June 30, 2021                                **MONTEVERDE & ASSOCIATES PC**

                                                    By:   */s/ Juan E. Monteverde*
                                                    Juan E. Monteverde (JM-8169)
                                                    The Empire State Building
                                                    350 Fifth Avenue, Suite 4405
                                                    New York, NY 10118
                                                    Tel:(212) 971-1341
                                                    Fax:(212) 202-7880
                                                    Email: jmonteverde@monteverdelaw.com

                                                    *Attorneys for Plaintiff*